PKC:CSK
F. # 2005R02177

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY 1 8 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

BARRY COHAN,

        Defendant.

- - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 07-841 (S-2)(FB)
(T. 18, U.S.C., §§
1028A(a)(1), 1028A(b),
1028A(c)(4), 1028A(c)(5),
1035(a)(1), 1035(a)(2), 1347,
2 and 3551 et seq.; T. 21,
U.S.C., § 853(p))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this indictment, unless otherwise indicated:

1.    The defendant BARRY COHAN was a dentist licensed by the State of New York.  COHAN maintained a general dental practice with offices at 38 West Park Avenue, Long Beach, New York (the "Long Beach Office"), and 8103 Avenue M, Brooklyn, New York (the "Brooklyn Office").

The Port Authority Plan

2.    The defendant BARRY COHAN treated numerous patients employed as police officers by the Port Authority of New York and New Jersey ("the Port Authority").  The Port Authority provided those officers, as well as its other employees, with dental insurance ("the Port Authority Plan").  The Port Authority

1

2

Plan was a self-insured health care benefit program, affecting interstate commerce, within the meaning of Title 18, United States Code, Section 24(b). The Port Authority Plan was administered by The Metropolitan Life Insurance, Co. ("MetLife"), an insurance company with headquarters in New York City that provides insurance and administers insurance programs nationwide. The Port Authority paid claims with its own funds.

3.   Reimbursements under the Port Authority Plan were initially capped based on a determination by the Port Authority as to what constituted the "reasonable and customary" fees for the services being provided. Subject to this cap, routine preventative care administered to Port Authority personnel and their dependents was reimbursed in full, while other dental procedures were reimbursed at a rate of 80%, with a required 20% patient co-payment. Certain cosmetic procedures were not covered. In approximately July 2004, the Port Authority lifted the cap and began reimbursing dentists based on their own reported fees without imposing any ceiling on reimbursements.

4.   In order to be reimbursed under the Port Authority Plan, the defendant BARRY COHAN and his office staff prepared and submitted claim forms to MetLife. Among other things, these forms identified the patient treated, the date(s) of treatment, the procedure(s) performed, and the fee(s) charged. Each claim form included a certification by COHAN that "the procedures as

indicated by date have been completed and that the fees submitted are the actual fees I have charged and intend to collect for those procedures."

The Fraud Scheme

5.    From on or about July 1, 2004 through May 1, 2006, the defendant BARRY COHAN submitted and caused to be submitted false and misleading claim forms to MetLife seeking reimbursement for procedures purportedly administered to Port Authority employees and their dependants.  These claim forms, as well as certain other written documents and certain oral statements that COHAN made, were false and fraudulent in one or more of the ways set forth below.

A.    Fradudulent Billing at Inflated Rates

6.    Once the Port Authority lifted its "reasonable and customary" cap, the defendant BARRY COHAN and office personnel acting under his direction began submitting claim forms to MetLife seeking reimbursement at substantially inflated rates for COHAN's treatment of Port Authority patients.

7.    The defendant BARRY COHAN falsely represented in these claim forms that the rates listed for particular procedures were his "actual fees."  In fact, the listed rates far exceeded both the amounts set forth in COHAN's own internal fee schedule and the amounts that COHAN charged for identical procedures performed on non-Port Authority patients.

4

8.    The defendant BARRY COHAN also falsely represented in these claim forms that he had "charged" and "intend[ed] to collect" the listed fees.  In fact, COHAN did not intend to collect any portion of those fees owed by his Port Authority patients and did not charge those patients their required co-payments or deductibles.

9.    The defendant BARRY COHAN accepted numerous checks from MetLife, paid for with Port Authority funds, that reimbursed him at the inflated billing rates set forth in his claim forms. COHAN deposited those checks into bank accounts under his control.

B.    Fraudulent Billing for Services not Rendered

10.   The defendant BARRY COHAN also submitted and caused to be submitted claim forms to MetLife stating that he had performed various dental procedures for Port Authority patients when, as COHAN well knew and believed, he had not actually performed those procedures.

11.   On several occasions, the defendant BARRY COHAN performed cosmetic dental procedures on Port Authority patients that were excluded from coverage under the Port Authority Plan. COHAN then submitted claim forms to MetLife seeking reimbursement for entirely different, non-cosmetic dental procedures that were not excluded from coverage.

12.  One cosmetic orthodontic procedure that the
defendant BARRY COHAN performed on several Port Authority
patients was the installation of an advanced form of braces
called "Invisalign."  Installation of Invisalign devices was not
reimbursable under the Port Authority Plan, except for limited
reimbursement for the installation of Invisalign devices on
minors.  COHAN instead submitted claim forms to MetLife in the
names of these patients seeking reimbursement for various other
dental procedures that he had not actually performed, including
"periodontal scaling and root planing" ("PSRP"), osseous-surgery
and gingivectomy.

13.  The defendant BARRY COHAN accepted numerous checks
from MetLife, paid for with Port Authority funds, that reimbursed
him for services that he had not actually rendered.  COHAN
deposited those checks into bank accounts under his control.

C.  Fraudulent Billing in the Name of Another Provider

14.  In or about August 2005, the Port Authority
stopped making payments on claims submitted by the defendant
BARRY COHAN pending investigation into his rates and billing
practices.  Recognizing that the Port Authority was no longer
reimbursing claims submitted in his name, COHAN submitted a
series of claim forms to MetLife under the name, social security
number, tax identification number and Dentist License Number of
another dentist (the "Other Dentist").  The Other Dentist

maintained a separate practice at COHAN's Brooklyn Office.  COHAN

submitted these claim forms without the Other Dentist's knowledge

or consent and, as COHAN well knew and believed, it was he, and

not the Other Dentist, who had performed the procedures listed on

the forms.

15.   The defendant BARRY COHAN accepted checks from

MetLife, paid for with Port Authority funds, which reimbursed the

services that COHAN had claimed under the Other Dentist's name.

COHAN deposited those checks into bank accounts under his

control.

D.    False Statements Intended to Defraud The Port Authority
      Plan

16.   In or about March 2006, the defendant BARRY COHAN

attended a meeting ("the Meeting") with persons whom he believed

to be representatives of the Port Authority ("the

Representatives") who had responsibility for resolving claims

that COHAN had previously submitted to MetLife for payment under

the Port Authority Plan.

17.   In or about and between August 2005 and the date

of the Meeting, the Port Authority withheld reimbursement on all

claims that the defendant BARRY COHAN submitted to MetLife in his

own name ("the Withheld Claims").

18.   At the Meeting, the defendant BARRY COHAN made

false, misleading and fraudulent statements to the

Representatives and concealed material facts from the

Representatives in an attempt to induce the Port Authority to reimburse COHAN for at least 80% of the total fees listed in the Withheld Claims.

19.  At the Meeting, the defendant BARRY COHAN, as part of a scheme to convince the Representatives that he was not fraudulently billing the Port Authority Plan at inflated rates and to conceal the truth about his billing practices, falsely stated to the Representatives, that: (1) COHAN told Port Authority patients the dollar amount of his fee for each dental procedure he performs on them; (2) COHAN billed Port Authority patients for those portions of COHAN's fees for which the Port Authority Plan did not reimburse him; (3) in most cases, Port Authority patients paid COHAN those portions of COHAN's fees for which the Port Authority Plan did not reimburse him; and (4) COHAN charged Port Authority patients and non-Port Authority patients the same fees for the same dental procedures.

E.  Defrauding Invisalign

20.  Align Technology, Inc. ("Align"), a Delaware corporation with headquarters in California, designed and sold Invisalign devices to dentists for use in their practice.  Align administered a program (the "Invisalign Program") pursuant to which a dentist, by establishing an Invisalign account with Align, obtained the ability to provide custom-designed Invisalign devices to patients.  The Invisalign program was a health care

benefit program, affecting interstate commerce, within the meaning of Title 18, United States Code, Section 24(b).  As part of the Invisalign Program, the dentist and Align entered into a patient-specific contract (the "Patient-Specific Contract") for each set of Invisalign devices that Align custom designed for use with a particular patient.

### i.   The Fraudulent Employee Discount Scheme

21.   If the dentist certified in writing in a Professional Discount Program Coupon ("PDC") that the patient for whom the dentist was ordering the devices was an employee of the dentist, then Align would sell the devices to the dentist at a significant discount (the "discount").  Align would not sell the devices to the dentist at the discount without the certification. The dentist was required to repay the full amount of the discount if Align determined that the patient was not an employee of the dentist.

22.   Pursuant to the Invisalign Program, the defendant BARRY COHAN purchased Invisalign devices from Align that he used in treating his Port Authority patients and their family members, including, in particular, John Doe, a Port Authority employee whose identity is known to the Grand Jury, and the wife and son of John Doe, individuals whose identities are also known to the Grand Jury (collectively, the "Does").

23.    In order to fraudulently purchase at a discount the Invisalign devices that he intended to use in treating the Does, the defendant BARRY COHAN, without the knowledge or consent of the Does, falsely represented to Align that each of the Does was an employee of his, when in fact, as COHAN well knew and believed, none of the Does was ever COHAN's employee.  Based upon COHAN's false representations, Align sold him Invisalign devices for each of the Does at the discount.

ii.   The Fraudulent Free Device Scheme

24.    In or about October 2006, Align, under its Patients First Program, whereby it offered free Invisalign devices to dentists for use in any patient who was undergoing orthodontic treatment with an Invisalign competitor product known as Ortho-Clear.  Align had obtained from the manufacturers of Ortho-Clear devices a list of Ortho-Clear customer-dentists and their patients (the "List").  To qualify under the Patients First Program, the patient's dentist, among other things, was required to request Invisalign devices for a patient whose name appeared on the List and to submit to Align the materials that were necessary for Align to produce Invisalign devices for that patient, including pictures of that patient's mouth and impressions of that patient's teeth.

25.    According to the List, the defendant, BARRY COHAN, in or about January 2006, submitted requests to Ortho-Clear for

it to produce Ortho-Clear devices to treat Richard Roe, a Port
Authority employee whose identity is known to the grand jury, and
his wife Rachel Roe, whose identity is also known to the grand
jury (collectively, the "Roes"). In order to fraudulently obtain
free Invisalign devices for use in patients other than the Roes,
COHAN, in or about January 2007, at a time when the Roes were no
longer his patients, submitted, under the names and dates of
birth of Richard and Rachel Roe, pictures and impressions of the
teeth of a man and a woman who, as COHAN well knew and believed,
were not Richard and Rachel Roe. In or about May 2007, based
upon COHAN's false submissions, Align sent to COHAN, free of
charge, Invisalign devices which Align believed it was producing
for Rachel Roe, but which COHAN intended to use in a person other
than Rachel Roe, a person whose name did not appear on the List
and for whom COHAN was not entitled to obtain free Invisalign
devices.

## COUNT ONE
(Health Care Fraud)

26.   The allegations contained in paragraphs one
through twenty-five are realleged and incorporated as if fully
set forth in this paragraph.

27.   On or about and between July 1, 2004 and May 1,
2006, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant BARRY
COHAN, together with others, did knowingly and willfully execute

and attempt to execute a scheme and artifice to defraud a health care benefit program, to wit: the Port Authority Plan, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, that health care benefit program, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United Code, Sections 1347, 2 and 3551 <u>et seq</u>.)

COUNT TWO
(Health Care Fraud)

28.   The allegations contained in paragraphs one through twenty-five are realleged and incorporated as if fully set forth in this paragraph.

29.   On or about and between July 1, 2004 and May 1, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BARRY COHAN, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, to wit: the Invisalign Program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, that health care benefit

12

program, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United Code, Sections 1347, 2 and 3551 et seq.)

COUNT THREE
(False Statements Relating to Health Care Matters)

30. The allegations set forth in paragraphs one through twenty-five are hereby realleged and incorporated as if fully set forth in this paragraph.

31. On or about and between July 1, 2004 and May 1, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BARRY COHAN, together with others, in matters involving a health care benefit program, to wit: the Port Authority Plan, did knowingly and willfully (a) falsify, conceal and cover up by trick, scheme and device material facts and (b) make materially false, fictitious and fraudulent statements and representations, and make and use materially false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items and services, in that: (1) the defendant submitted claim forms to MetLife falsely reporting that he had performed various dental procedures; (2) the defendant submitted claim forms to MetLife falsely representing that the Other Dentist had performed the procedures

13

listed on the claim forms; (3) at the Meeting, the defendant made
false, misleading and fraudulent statements to, and concealed
material facts by trick from, the Representatives; and (4) the
defendant submitted claim forms to MetLife in which he falsely
represented that he had charged and intended to collect the fees
set forth for each procedure listed on the claim forms for his
Port Authority patients.

(Title 18, United States Code, Sections 1035(a)(1),
1035(a)(2), 2 and 3551 et seq.)

COUNT FOUR
(False Statements Relating to Health Care Matters)

32.  The allegations set forth in paragraphs one
through twenty-five are hereby realleged and incorporated as if
fully set forth in this paragraph.

33.  On or about and between July 1, 2004 and May 1,
2006, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant BARRY
COHAN, together with others, in matters involving a health care
benefit program, to wit: the Invisalign Program, did knowingly
and willfully (a) falsify, conceal and cover up by trick, scheme
and device material facts and (b) make materially false,
fictitious and fraudulent statements and representations, and
make and use materially false writings and documents knowing the
same to contain materially false, fictitious and fraudulent
statements and entries, in connection with the delivery of and

payment for health care benefits, items and services, in that the defendant submitted PDCs, Patient-Specific Contracts, forms, pictures and impressions to Align falsely representing that (1) each of the Does was his employee and (2) persons other than the Roes had the names and dates of birth of the Roes.

(Title 18, United States Code, Sections 1035(a)(1), 1035(a)(2), 2 and 3551 et seq.)

## COUNT FIVE
### (Aggravated Identity Theft)

34.    The allegations contained in paragraphs one through twenty-five are realleged and incorporated as if fully set forth in this paragraph.

35.    On or about and between August 1, 2005 and May 1, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BARRY COHAN, together with others, during and in relation to the crimes charged in Counts One and Three, did knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of another person, to wit: the name, social security number, tax identification number and the Dentist License Number of the Other Dentist.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(4), 1028A(c)(5), 2 and 3551 et seq.)

COUNT SIX
(Aggravated Identity Theft)

36. The allegations contained in paragraphs one through twenty-five are realleged and incorporated as if fully set forth in this paragraph.

37. On or about and between August 1, 2005 and May 1, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BARRY COHAN, together with others, during and in relation to the crimes charged in Counts Two and Four, did knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of other persons, to wit: (a) Richard Roe; and (b) Rachel Roe.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(4), 1028A(c)(5), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION

38. The United States hereby gives notice to the defendant charged in Counts One through Four that, upon his conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to the following:

## MONEY JUDGEMENT

(a)   A sum of money equal to at least approximately $600,000 in United States currency;

## SPECIFIC PROPERTY

(b)   All right, title and interest in all funds on deposit up to and including the sum of $300,000 in Account No. HN29-5586-4877 in the name of and/or for the benefit of Audrey Cohan at Stifel, Nicolaus and Company, and all proceeds traceable thereto;

(c)   All right, title and interest in all funds on deposit up to and including the sum of $100,000 in Account No. 75300007681 in the name of and/or for the benefit of Audrey Cohan at Roslyn Savings Bank, and all proceeds traceable thereto; and

(d)   All right, title and interest in all funds on deposit up to and including the sum of $100,000 in Account No. 560024117 in the name of and/or for the benefit of Barry and Audrey Cohan at Roslyn Savings Bank, and all proceeds traceable thereto.

39.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Section 853(p))

A TRUE BILL

*William Wolmer*

FOREPERSON

BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____

ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

**INFORMATION SHEET**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ **MAY 1 8 2009** ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**BROOKLYN OFFICE**

1.  Title of Case: _USA v Berry Cohon 07-841 (FB) (S-2)_

2.  Related Magistrate Docket Number(s) _____

      None ( )

3.  Arrest Date: _____

4.  Nature of offense(s):    Felony
                                     Misdemeanor

5.  Related Cases - Title and Docket No(s).  (Pursuant to Rule 50.3 of the
    Local E.D.N.Y. Division of Business Rules): _This is a second
    Superseding I & that_

6.  Projected Length of Trial:    Less than 6 weeks   ( )
                                            More than 6 weeks    ( )

7.  County in which crime was allegedly committed: _Brooklyn & Nassau_
    (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.  Has this indictment/information been ordered sealed?      ( ) Yes  (X) No

9.  Have arrest warrants been ordered?                                ( ) Yes  (X) No

10. Is there a capital count included in the indictment?      ( ) Yes)  (X) No

BENTON CAMPBELL
UNITED STATES ATTORNEY

By: _____

Assistant U.S. Attorney
(718) 254- 6013

Rev. 3/22/01

FORM DBD.34
JUN.85

No. 2005R02177

# UNITED STATES DISTRICT COURT

EASTERN _____ District of ___ NEW YORK ___

_____ CRIMINAL _____ Division

THE UNITED STATES OF AMERICA

vs.

BARRY COHEN,

Defendant(s).

## S U P E R S E D I N G
## I N D I C T M E N T
## CR-07-841(S-2)(FB)

(T. 18, U.S.C., §§ 1028A(a)(1), 1028A(b),
1028A(c)(4), 1028A(c)(5), 1035(a)(1), 1035(a)(2),
1347, 2 and 3551 et seq.; T. 21, U.S.C. § 853(p))

A true bill: _William Vilma_____

_____ Foreman

Filed in open court this _____ day.

of _____ A.D. 19 ____

_____ Clerk

Bail, $ _____

CHARLES KLEINBERG, AUSA   (718) 254-6012