UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNITED STATES OF AMERICA

-against-

BARRY COHAN,

Defendant.

------------------------------------------------------x

**ORIGINAL**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUN 2 5 2009 ★
BROOKLYN OFFICE

**FOR PUBLICATION IN F.SUPP.2d**

**OPINION**
Case No. 07-CR-841 (FB)

*Appearances:*
*For the United States:*
CHARLES STEVEN KLEINBERG, ESQ.
DANIEL D. BROWNELL, ESQ.
RICHARD T. FAUGHNAN, ESQ.
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

*For the Defendant:*
JOHN N. TASOLIDES, ESQ.
Law Offices of John N. Tasolides
6800 Jericho Turnpike 110W
Syosset, NY 11791

RONALD G. RUSSO, ESQ.
Herzfeld & Rubin, P.C.
40 Wall Street, 55th Floor
New York, NY 10005

**BLOCK, Senior District Judge:**

Defendant Barry Cohan ("Cohan") has moved pursuant to Federal Rule of Criminal Procedure 41(h) to suppress the fruits of the search of his dental office on the ground that the warrant authorizing that search was insufficiently specific. On June 2, 2009, the Court denied the motion from the bench, stating that a written opinion would follow. The Court writes to explain the reasoning behind its decision, noting that although suppression is unwarranted in this case, (1) the underlying affidavit must be attached to the warrant and specifically incorporated by reference if it is needed to satisfy the *particularity* prong of the Fourth Amendment, and (2) the law is unclear as to when, if at all, the failure of a warrant to specify a time frame for the seizure of business records would violate the Fourth Amendment's *overbreadth* prong.

# BACKGROUND

## I. The Charges Against Cohan

On November 16, 2007, Cohan, a dentist, was indicted on one count of health care fraud and one count of false statements relating to health care matters. Two superseding indictments added a second count of health care fraud, a second count of false statements relating to health care matters, and two counts of aggravated identity theft. The charges stemmed from Cohan's allegedly fraudulent billing practices in connection with certain patients who were employees of the Port Authority of New York and New Jersey ("PA"). These alleged practices included billing the PA insurance plan for services not actually rendered, billing the PA plan in the name of another dentist, and billing the PA plan at inflated rates.[1]

## II. The Search at Issue

Much of the Government's evidence was seized during a search of Cohan's dental office. The search was timely conducted pursuant to a warrant issued on February 27, 2006 by Magistrate Judge Cheryl L. Pollak ("the warrant"). The relevant portion of the warrant reads as follows:

> Affidavit(s) having been made before me by *James W. Diercksen*[,] who has reason to believe that [*in Cohan's office*] there is now concealed a certain person or property, namely *items listed in the attached Rider*[,] I am satisfied that the affidavit(s) and any recorded testimony establish probable

---

[1] Cohan moved to dismiss this last aspect of the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), arguing that the facts alleged failed to state an offense. The Court denied Cohan's motion from the bench on June 2, 2009, at the same time it denied the motion addressed in this opinion.

cause . . . for the issuance of this warrant.[2]

Attached to the warrant was a rider titled "Items to be Seized," which read,
in relevant part, as follows:

> The following items and records, however stored, whether
> electronically or in paper form, and wherever situated or
> stored, whether contained in locked or unlocked cabinets,
> safes, desks, closets or other containers [in Cohan's office]:
>
> > (1) files reflecting the course of treatment for each
> > patient of Doctor Barry Cohan, the x-rays and other
> > records of examinations for each patient, payment and
> > other financial records, including bank records and state
> > and federal tax returns, claims and other insurance
> > documents, appointment calenders [sic],
> > correspondence, and reports of specialists treating the
> > dentist's patients;
> >
> > (2) any items and/or materials capable of storing the
> > data and information described [above] in an electronic
> > format, including [computer files, hardware, etc.].

The warrant was issued on the basis of a supporting affidavit ("the
affidavit") of Port Authority Officer James W. Diercksen ("Diercksen"), which described
in detail the Government's theory of fraud and the grounds for probable cause. At oral
argument, the Government acknowledged that Diercksen was responsible for conducting
the search.

In particular, the affidavit explained that until July 2004, the PA would only
pay dentists a fixed "reasonable and customary" fee for dental procedures performed on
PA patients. In July 2004, the PA had removed the "reasonable and customary" cap and

---

[2] The warrant is a standard pre-printed form; the portions in italics were type-
written in the form's blank spaces.

3

agreed to reimburse 80% of a dentist's fee, however high – *provided that* the dentist collected the remaining 20% from the patient as a co-payment. This co-payment requirement, the affidavit noted, was the sole check on Cohan's fees after July 2004: if Cohan's fees became outrageously high, his patients would presumably balk at paying 20% of those drastically inflated fees; on the other hand, if Cohan did not collect the co-payment, he would be able to set his fees arbitrarily high and simply collect 80% of that amount from the PA.

To prevent such tactics, the PA's insurance claim forms required dentists to certify that their fees included the 20% co-payment, and that those fees were "the actual fees [they] ha[d] charged and intend[ed] to collect . . . ." Aff. ¶ 5. The affidavit then alleged, based upon records in the Government's possession, that Cohan "rarely, if ever, . . . charge[d] his [PA] patients the 20% co-payment" for services he performed on them, *id.* ¶ 23, even though he certified on his claim forms that he intended to do so. It also stated that Cohan had informed a confidential source who was a PA employee "that [he] need not pay any co-payment for [his] treatment." *Id.*

The affidavit further alleged, also based upon records in the Government's possession, that Cohan had submitted claims for performing certain expensive services on PA patients far more frequently than he had submitted claims for performing those same services on non-PA patients, and that "the unusual frequency of certain types of procedures among [PA] employees suggests that C[ohan] did not in fact perform these procedures." *Id.* ¶ 22. Lastly, the affidavit noted that Cohan had a prior history of fraud: the New York State Board of Dentistry in 1998 had found Cohan guilty of "practicing the

profession of dentistry fraudulently" in that, "on at least four separate occasions between February 1990 and July 1992, . . . C[ohan] had submitted false claim forms . . . for reimbursement." *Id.* ¶ 24.

Nothing in the record indicates that the affidavit was affixed to the warrant.

## DISCUSSION

Cohan objects to what he terms "the extraordinary breadth of this warrant," arguing that its description authorized the seizure from Cohan's office of "every document of every kind, from the beginning of time to the present." Cohan's Letter Mot. of May 28, 2009 at 2. He claims that "[b]y listing every type of record that could conceivably be found in an office, . . . the government created a *de facto* general warrant." *Id.* Cohan asserts that it "would have been possible for the government to limit [the warrant's description] . . . by . . . seeking to obtain records only of PA patients, or seeking records only for a finite time frame." *Id.* at 3. The Government, in response, argues that the warrant was sufficient on its face to pass muster under the Fourth Amendment, and that, in any event, the detailed allegations in the underlying affidavit save the warrant from any constitutional infirmity. Neither party mentions the "good-faith" exception to the exclusionary rule.

The Fourth Amendment's Warrants Clause imposes two central requirements on search warrants: (1) that "no Warrants shall issue, but upon probable cause," and (2) that search warrants must "particularly describ[e] . . . the . . . things to be seized." A warrant, therefore, can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause

exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries. *See United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (Fourth Amendment "[s]pecificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."); *see also United States v. Costin*, No. CRIM 3:05-CR-38 JCH, 2006 WL 2522377, at *7 (D. Conn. July 31, 2006) ("The defendants' argument that the warrants . . . were unconstitutional may be considered in two separate but related parts: first, . . . that they were overbroad because they authorized the seizure of more property than that for which the [affidavit] had shown probable cause; and second, . . . that they included no meaningful limitation at all . . . .").[3]

## I. Particularity

The Fourth Amendment's particularity requirement targets "the specific evil [of] the 'general warrant' abhorred by the colonists." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). In other words, it is meant to prevent the "general, exploratory rummaging in a person's belongings." *Id.* The Supreme Court has stated that under a

---

[3] Courts have occasionally "been unclear on the difference between particularity and overbreadth," *United States v. SDI Future Health, Inc.*, --- F.3d ----, 2009 WL 1508763, at *12 (9th Cir. June 1, 2009), sometimes using the terms interchangeably and/or failing to conduct a separate analysis for each. *See, e.g., United States v. Hershenow*, 680 F.2d 847, 852 (1st Cir. 1982) ("Because the affidavit establishes probable cause to seize all accident patient files, the warrant, which is confined to seizure of those materials, is sufficiently particular."). However, because the text of the Fourth Amendment imposes separate requirements of particularity and probable cause, "particularity and overbreadth [are properly considered] two distinct parts of the evaluation of a warrant for Fourth Amendment purposes." *SDI Future Health*, 2009 WL 1508763, at *12.

properly particular warrant, "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant," *Marron v. United States*, 275 U.S. 192, 196 (1927), although the Second Circuit has noted that the apparent "no discretion" standard which the Supreme Court enunciated over eighty years ago in *Marron* "has not always been applied literally." *United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984); *see also United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987). Rather, under the law as applied in this circuit, a warrant is sufficiently particular if it "enable[s] the executing officer to ascertain and identify *with reasonable certainty* those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (emphasis added); *see also United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000) ("A warrant must be sufficiently specific to permit the *rational exercise of judgment* [by the executing officers] in selecting what items to seize." (internal quotation marks omitted) (emphasis added) (alteration in original)).

The Supreme Court's leading modern case on the particularity requirement is *Andresen v. Maryland*, 427 U.S. 463 (1976), which involved a challenge to a warrant authorizing the seizure of

> [T]he following items pertaining to sale, purchase, settlement and conveyance of [a certain parcel of real estate]: title notes, title abstracts, title rundowns; contracts of sale and/or assignments . . . ; lien payoff correspondence and lien pay-off memoranda to and from lienholders and noteholders; correspondence and memoranda to and from trustees of deeds of trust; lenders instructions for a construction loan or construction and permanent loan; disbursement sheets and disbursement memoranda; checks, check stubs and ledger sheets indicating disbursement upon settlement; correspondence and memoranda concerning disbursements

> upon settlement; settlement statements and settlement
> memoranda; fully or partially prepared deed of trust releases,
> whether or not executed and whether or not recorded; books,
> records, documents, papers, memoranda and correspondence,
> showing or tending to show a fraudulent intent, and/or
> knowledge as elements of the crime of false pretenses . . . ,
> *together with other fruits, instrumentalities and evidence of crime at*
> *this (time) unknown.*

*Id.* at 482 n.10 (internal quotation marks omitted) (emphasis added). The petitioner

argued both "that the specific list of the documents to be seized constitute[d] a 'general'

warrant" on account of its sheer length and that the italicized phrase referring to "other

. . . evidence of crime at this (time) unknown" rendered the warrant fatally indefinite. *Id.*

The court disagreed that the length of the itemized list of documents

rendered the warrant insufficiently particular, observing that the types of documents,

although numerous, were named with sufficient clarity. *See id.* Moreover, it noted that

the alleged crime was a complex one requiring extensive documentary evidence:

> Under investigation was a complex real estate scheme whose
> existence could be proved only by piecing together many bits
> of evidence. Like a jigsaw puzzle, the whole "picture" of
> petitioner's false-pretense scheme . . . could be shown only by
> placing in the proper place the many pieces of evidence that,
> taken singly, would show comparatively little. The complexity
> of an illegal scheme may not be used as a shield to avoid
> detection . . . .

*Id.* As for the allegedly offending catch-all phrase, the court held that because "it appears

. . . at the end of a sentence containing a lengthy list of specified and particular items to be

seized," it "must be read as authorizing only the search for and seizure of evidence

relating to the crime [at issue]" and therefore did not render the warrant insufficiently

particular. *Id.* at 480 (internal quotation marks omitted).

By contrast, in *United States v. Buck*, the Second Circuit held *insufficiently* particular a search warrant describing the crime at issue and simply authorizing the seizure of "any papers, things or property of any kind relating to [the] previously described crime." 813 F.2d at 590. The court remarked that "[t]he warrant here was . . . *all* in general boilerplate terms, without either explicit or implicit limitation on the scope of the search." *Id.* at 591 (emphasis added); *see also id.* at 592 ("The warrant only described the crimes – and gave no limitation whatsoever on the kind of evidence sought."). The court contrasted the warrant with the warrant the Supreme Court upheld in *Andresen*, noting that the *Andresen* warrant "did list some specific items whereas the warrant before us listed none." *Id.* at 591. As a result, the Second Circuit held that "the warrant left it entirely to the discretion of the officials conducting the search to decide what items were to be seized, and thus was not permissible under the Fourth Amendment." *Id.* at 592 (internal quotation marks and citation omitted); *accord United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (holding warrant insufficiently particular on account of its "broad authorization to search for 'any other evidence relating to the commission of a crime'").

The warrant in this case is nowhere near as vague and open-ended as the warrants the Second Circuit held unconstitutional in *Buck* and *George*. Far from consisting of "*all* . . . general boilerplate terms," *Buck*, 813 F.2d at 591 (emphasis added), it explicitly lists various types of documents and does not contain a catch-all provision. Thus, while the warrant embraces a large amount of material, "nothing is left to the discretion of the officer executing the warrant," *Marron*, 275 U.S. at 196, and the warrant, therefore, is not insufficiently particular. *Accord Worthington v. United States*, 726 F.2d 1089, 1095 (6th Cir.

1984) (Contie, J., concurring) ("Although the search warrant under review was quite broad in scope, it was not a general warrant because it gave the . . . inspectors no discretion to determine what items would be seized. [It] . . . ordered the inspectors to seize all of Worthington's medical records; they were not given authority to pick and choose."); *United States v. Hershenow*, 680 F.2d 847, 851 (1st Cir. 1982) ("The . . . warrant authorizes the seizure of 'all accident patient files' . . . . On its face, nothing is left to the discretion of the executing officers – they are to take all files pertaining to patients involved in accidents.").

Cohan's claim that the warrant lacks particularity because it lists so many types of documents is foreclosed by *Andresen*'s observation that the number of different categories of documents is immaterial so long as each type of document is clearly delineated, as is the case here. *See also United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986) ("The number of files that could be scrutinized . . . is not determinative."); *United States v. Maali*, 346 F. Supp. 2d 1226, 1243 (M.D. Fla. 2004) ("Warrants have survived particularity challenges even where they have called for the seizure of many categories of items. Although the warrants at issue here encompass many types of records, they sufficiently describe what is within their terms."). Similarly, "[t]hat the list was one of *types* of records rather than individually titled documents does not render the warrant constitutionally unsound[, because u]nlike other forms of property, business records are often incapable of being itemized one by one . . . ." *United States v. Zanche*, 541 F. Supp. 207, 210 (W.D.N.Y. 1982) (emphasis added).

It also bears noting that here, as in *Andresen*, the charged offense is a

10

"complex . . . scheme whose existence could be proved only by piecing together many bits of evidence," not a straightforward crime such as drug possession where the types of evidence that will be relevant are few and obvious. 427 U.S. at 482 n.10. As a result, a lengthy list of categories is to be expected: "[t]he degree to which a warrant must state its terms with particularity varies inversely with complexity of the criminal activity investigated." *United States v. Regan*, 706 F. Supp. 1102, 1113 (S.D.N.Y. 1989); *accord United States v. Abboud*, 438 F.3d 554, 575 (6th Cir. 2006) ("In a business fraud case, the authorization to search for general business records is not overbroad."); *United States v. Majors*, 196 F.3d 1206, 1216 (11th Cir. 1999) ("Due to the peculiar nature of a charge of fraud, . . . an application to search . . . for '[b]ooks, [l]edgers, [r]eceipts, [i]nvoices, [b]usiness records, the identification of [f]inancial accounts and any other evidence which is evidence in violation of [two sections of Title 18]' describes with particularity the items to be seized."); *United States. v. Poulsen*, No. CR2-06-129, 2008 WL 271661, at *5 (S.D. Ohio Jan. 30, 2008) ("[I]t makes no sense to analogize the search warrant in this case to cases involving drugs or theft, . . . because the items to be seized in those cases – drugs and jewelry, for instance – are amenable to a more precise description than are corporate records revealing fraud.").

Consequently, the Court concludes that the warrant on its face meets the particularity branch of the Fourth Amendment's specificity test. However, the Court notes that if the warrant were *insufficiently* particular on its face, under recent Supreme Court and Second Circuit decisions the Government could not rely on the detailed information in the affidavit to cure the warrant's lack of particularity since the

Government has not established that the affidavit was attached to the warrant, and it was not specifically incorporated by reference. In light of these cases, the Government's reliance on *United States v. Bianco*, 998 F.2d 1112 (2d Cir. 1993), to justify the use of the affidavit is outdated and misplaced.

In *United States v. George*, the Second Circuit held that "[r]esort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it." 975 F.2d at 76; *see also id.* (stating that the mere "recitation in [a] warrant that is 'issued upon the basis of . . . [a particular] affidavit[ ]' . . . does not direct the executing officers to refer to the affidavit for guidance concerning the scope of the search and hence does not amount to incorporation by reference."). Subsequently, in *Bianco,* the Second Circuit carved out an exception where, as in the present case, the executing officers "were aware of" the contents of the affidavit. 998 F.2d at 1117. It reasoned that under such circumstances, "the functional purposes of [the requirements of incorporation and attachment] – to insure that all parties involved are informed of the scope of and limits upon the authorized search – [are] fully satisfied," *id.* at 1116-17 (citations omitted); therefore, there is no need to "adhere to formal requirements of incorporation and attachment . . . ," *id.* at 1117.

However, in *Groh v. Ramirez*, 540 U.S. 551 (2004), the Supreme Court flatly held that "[t]he fact that the [*affidavit*] adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 557. The *Groh* court added in dicta:

> We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit *if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.* But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application . . . accompany the warrant. Hence, we need not further explore the matter of incorporation.

*Id.* at 557-58 (internal citations omitted) (emphasis added). The Supreme Court did not suggest that any exception to the formal requirements of incorporation and attachment might exist; indeed, exceptions would be incompatible with *Groh's* textualist holding that "[t]he Fourth Amendment by its terms requires particularity *in the warrant* . . . ." 540 U.S. at 557 (emphasis added).

While the Second Circuit has not formally renounced *Bianco*, at least two recent district court decisions in this circuit have concluded or speculated that *Groh* vitiated its holding. *See United States v. Ryan*, No. 2:07-cr-35, 2008 WL 901538, at *2 (D. Vt. Mar. 31, 2008) ("Although *Bianco* suggests that a lack of particularity in the warrant may be cured by reference to the affidavit even if there is no express incorporation, this dictum does not survive the Supreme Court's decision in *Groh*.") (internal citation omitted); *United States v. Vilar*, No. S305-CR-621-KMK, 2007 WL 1075041, at *22 n.13 (S.D.N.Y. Apr. 4, 2007) ("*Bianco* is of questionable use to the Government. . . . [*Groh's*] holding sheds doubt on whether an unincorporated document may ever be used to satisfy the particularity requirements of the Fourth Amendment."). Moreover, in *United States v. Waker*, the Second Circuit most recently relied on *Groh*, noting that the "affidavit was attached to the

search warrant" and that the warrant contained "*deliberate and unequivocal* language of incorporation," in deeming the affidavit incorporated. 534 F.3d 168, 172 (2d Cir. 2008) (emphasis added); *see also id.* at 173 n.2 (noting that warrant stated that affidavit "is incorporated herein by reference" and magistrate had "initialed the [relevant] portion of the attached affidavit").

Thus, in light of *Groh* and *Waker*, the Government cannot rely on language in a warrant simply referencing the underlying affidavit to satisfy the particularity prong of the Fourth Amendment; rather, it must attach the affidavit to the warrant and incorporate it by reference using "deliberate and unequivocal language." *Waker*, 534 F.3d at 172.

## II. Overbreadth

Cohan argues that the warrant is overbroad because it fails to restrict the documents to be seized to those pertaining to PA patients or to those generated within the time frame of the alleged offense, raising the issue of whether the affidavit established probable cause to seize documents outside of these categories.

A reviewing court must uphold "an issuing magistrate's probable cause determination . . . so long as the magistrate has a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Jones v. United States*, 362 U.S. 257 (1960)). When reviewing a search warrant for probable cause, "great deference" must be given to the magistrate's original probable-cause determination, *id.* at 236 (citation omitted), as the magistrate's duty is merely "to make a practical, common-sense decision whether, given all the circumstances

14

... there is a fair probability that . . . evidence of a crime will be found in a particular place," *id.* at 238.

## A. Lack of Restriction to PA Patients

Contrary to Cohan's assertion, the warrant's lack of a restriction to the files of PA patients does not render it overbroad, as the supporting affidavit establishes probable cause to seize PA as well as non-PA patient files.[4] The affidavit notes that according to insurance records already in the Government's possession, Cohan claimed to have performed certain services on PA patients with suspiciously high frequency as compared to non-PA patients; it then reasons that "the unusual frequency of certain types of procedures among [PA] employees suggests that C[ohan] did not in fact perform these procedures." Aff. ¶ 22. This establishes a fair probability that the non-PA patients' records, viewed in conjunction with the PA patients' records, would contain circumstantial evidence of fraud. Additionally, the affidavit asserts that the records in the Government's possession show that Cohan had rarely, if ever, charged PA patients their co-payments. Consequently, there was a fair probability that the non-PA patients' records would establish Cohan's fraud if they indicated a drastically higher rate of co-payment

---

[4] Although the affidavit may not be construed in conjunction with the warrant for purposes of a *particularity* analysis, the affidavit must nonetheless be considered for purposes of an *overbreadth* (i.e., probable-cause) analysis: because particularity deals with the extent to which the executing officer's discretion is cabined, *see Marron*, 275 U.S. at 196, the relevant perspective for that analysis is that of those at the scene of the search, who do not have meaningful access to the affidavit unless it is incorporated and attached, *see Groh*, 540 U.S. at 557; on the other hand, the probable-cause analysis must be performed from the perspective of the magistrate who issued the warrant, *see Gates*, 462 U.S. at 236, to whom the supporting affidavit is always presented, regardless of whether it is incorporated or attached.

collection.

Cohan asserts that the mere fact that the non-PA records would help prove the Government's case cannot justify the seizure of those "innocent" records. To the contrary, courts have often found probable cause for the seizure of the records of "innocent" transactions when those records made the fraudulence of *other* transactions clear. *See, e.g., United States v. Diaz*, 841 F.2d 1, 3-4 (1st Cir. 1988) ("We recognize . . . that there is insufficient [evidence in the affidavit] to implicate any USDA inspector other than Matos. [However], it seems obvious that mere partial knowledge of what was purchased (*e.g.*, only [records pertaining to] lots inspected by Matos) would be insufficient to show [the fraud]."); *United States v. Blumberg*, No. 3:97-CR-119 (EBB), 1998 WL 136174, at *7 (D. Conn. Mar. 11, 1998) ("[L]egitimate business records are also material to a reconstruction of the methodology and extent of such a complex scheme."); *Regan*, 706 F. Supp. at 1113 ("[M]aterial evidence of criminal activity is not necessarily limited just to evidence describing the criminal activity, particularly in complex tax fraud cases. In order to reconstruct defendants' true financial and tax picture, evidence regarding legal as well as illegal transactions may be necessary."). Here, too, the Court concludes that there was probable cause to believe the "innocent" non-PA patient files contained material evidence of the alleged fraud on the PA.

**B.** *Lack of a Restriction as to Time*

In this case, the affidavit is most logically read as suggesting that Cohan's fraud on the PA began in July 2004, when the PA began relying on co-payments as the sole

16

check on Cohan's fees. However, there was probable cause to believe that records *prior to* July 2004 would also contain evidence of Cohan's fraud. *See Abboud*, 438 F.3d at 576 n.7 ("[E]vidence that dated from outside of the time period may be relevant to the activity within the time period."); *Shilling*, 826 F.2d at 1369 ("[D]ocuments from an earlier time may have bearing on the tax violations alleged in a later year."); *Zanche*, 541 F. Supp. at 210 ("[I]f the fraud operation under investigation was ongoing, evidence of illegal activity in the past would be relevant to the conspiracy, while records of legitimate transactions prior to the conspiracy will help determine how and when the fraud scheme began.").

First, Cohan's fees and the frequency with which he performed various procedures under the pre-July 2004 "reasonable and customary" regime would provide a necessary baseline with which to compare Cohan's fees and frequency of performing those same procedures after the cap was lifted. Second, the pre-July 2004 records of Cohan's individual patients could be required to ascertain whether certain procedures allegedly performed on those same patients after July 2004 were performed: for example, if Cohan had filed an insurance claim for a particular patient indicating a root canal of a particular tooth in 2005, a 2003 record showing the extraction of the same tooth from the same patient would be relevant in showing the fraudulence of the 2005 claim.

Moreover, the affidavit noted that Cohan had a prior history of other arguably similar frauds dating back at least to 1990. Therefore, apart from the alleged fraud on the PA, there was a fair probability that the pre-2004 records would yield evidence of *other* fraudulent claims, and such evidence would be potentially admissible

17

under Federal Rule of Evidence 404(b) to demonstrate intent or absence of mistake as to the PA fraud. *See Andresen*, 427 U.S. at 483-84 (upholding seizure of documents "pertaining specifically to a lot other than" the parcel of real estate involved in the alleged crime, where "the records could be used to show intent to defraud with respect to [the parcel at issue]"); *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 59 (D. Conn. 2002) ("[I]t was also permissible to seize evidence of other related [acts] because that would be relevant and admissible under Fed. R. Evid. 404(b) as probative of the defendants' intent . . . or the absence of mistake.").

Even though there arguably was probable cause to seize records dating back as far as 1990, the warrant contained *no time frame at all*; thus, it allowed the seizure of records dating back arbitrarily far, including even decades-old records of vanishingly small relevance. *See United States v. Corey*, 566 F.2d 429, 432 (2d Cir. 1977) (stating that "relevancy of [evidence of prior bad acts] is [undercut] by its remoteness in time").

The case law is hardly uniform as to when, if at all, the absence of a time frame would violate the overbreadth prong of the Fourth Amendment, and the Second Circuit has yet to consider the issue.

In a number of out-of-circuit decisions, courts have found warrants for the seizure of business records constitutionally deficient where they imposed too wide a time frame or failed to include one altogether. *See, e.g., Abboud*, 438 F.3d at 576 (stating that "[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad" and holding that "all evidence seized

irrelevant to the three-month period [for which probable cause existed] should have been suppressed"); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (finding warrant overbroad where, *inter alia*, "[t]he government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place" and invalidating entire search); *Diaz*, 841 F.2d at 4-5 (finding warrant overbroad because it "included permission to seize records . . . [before the date] when the first instance of wrongdoing mentioned in the affidavit occurred" but refusing to order suppression of such records because good-faith exception applied); *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980) (stating that "[a] time frame should . . . have been incorporated into the warrant" and invalidating entire search).

Still other out-of-circuit decisions have not treated a warrant's lack of a time frame as dispositive. *See, e.g., United States v. Khalid*, No. 93-2345, 1994 WL 684525, at *2 (5th Cir. Nov. 14, 1994) ("[T]he failure of the warrants to specify an explicit time for the documents sought is not alone conclusive as to the validity of the warrants."); *United States v. Bucuvalas*, 970 F.2d 937, 942 n.7 (1st Cir. 1992) ("Temporal delineations are but one method of tailoring a warrant description to suit the scope of the probable cause showing."), *overruled on other grounds by Cleveland v. United States*, 531 U.S. 12 (2000); *United States v. Shilling*, 826 F.2d 1365, 1369 (4th Cir. 1987) ("[T]here is no flaw in the fact that the documents covered by the warrant did not have specific time periods attached."), *overruled on other grounds by Staples v. United States*, 511 U.S. 600 (1994); *United States v. Graham*, Cr. No. 08-251 (JNE/JJG), 2009 WL 1066048, at *8 (D. Minn. Apr. 20, 2009) ("A

warrant must describe only two things with particularity: the place to be searched and the items to be seized. Graham has cited no authority that every warrant must include date restrictions in order to be facially valid." (internal citation omitted));[5] *United States v. Courtney*, No. 4:07-CR00261 JLH, 2008 WL 4998997, at *5 (E.D. Ark. Nov. 20, 2008) ("Defendant's insistence that the application and warrant were defective because they lacked a 'time frame' eludes the Court entirely."); *Poulsen*, 2008 WL 271661, at *6 ("[T]he warrant itself does not specify any time frame, nor was it required to do so."); *United States v. Kofsky*, Cr. No. 06-392, 2007 WL 2480971, at *19 (E.D. Pa. Aug. 28, 2007) (upholding warrant authorizing "seizure of medical records irrespective of time" where, *inter alia*, "the alleged scheme was complex and ongoing" and "a broad range of documents would be entailed in sorting out the details of this sophisticated scheme").

Amongst the district courts in this circuit, while there is general agreement that a time frame is *relevant*, there is no apparent consensus as to when one is required. *See, e.g., Costin*, 2006 WL 2522377, at *11 ("A warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, *may* render it insufficiently particular." (emphasis added)); *Triumph Capital*, 211 F.R.D. at 58 ("A temporal limitation in a warrant is not an absolute necessity, but is only one indici[um] of particularity.");[6] *United States v. Gotti*, 42 F. Supp. 2d 252, 274 (S.D.N.Y. 1999)

---

[5] Since the issue of time frames is one of overbreadth, *Graham* is an example of a court conflating the concepts of overbreadth and particularity. *See supra* note 3.

[6] *Costin* and *Triumph Capital* are other examples of decisions using loose language conflating particularity and overbreadth.

("Nor, in light of the circumstances and the fact that JAG Brokerage was believed to have served only as an instrumentality of racketeering, is the warrant defective because it contained no time limitations."); *Blumberg*, 1998 WL 136174, at *7 (stating that the presence of a time frame in the warrant is a "factor[] the Court should consider" in its analysis); *United States v. Hickey*, 16 F. Supp. 2d 223, 239 (E.D.N.Y. 1998) ("Clearly, the warrants, being devoid of a time limitation, authorized searches for documents that both pre-date and post-date the periods of charged criminality. This void supports defendants' overbreadth argument."); *Roberts v. United States*, 656 F. Supp. 929, 935 (S.D.N.Y. 1987) ("With no limit as to . . . the dates of the documents to be seized, . . . the warrant in this case authorized a general, exploratory rummaging in a person's belongings."(internal quotation marks and citations omitted)), *rev'd on other grounds*, 852 F.2d 671 (2d Cir. 1988); *Zanche*, 541 F. Supp. at 210 ("While I do not agree that a limited time frame will never be called for, . . . courts in this circuit have approved warrants for business records unrestricted by time limitations." (citations omitted)).

In light of the conflicting authorities, the Court would have to speculate as to how the Second Circuit would decide when, if at all, the lack of a time frame would render a warrant for the seizure of business records overbroad. However, the Court need not do so, because this uncertainty triggers the "good-faith" exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897 (1984).[7]

---

[7] Although the Court does not decide the time-frame question, the Government should consider incorporating time frames into business-record search warrants to avoid potential constitutional pitfalls in the future.

In establishing the "good-faith" exception, the Supreme Court reasoned that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. Accordingly, where "[an] officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable," a reviewing court's subsequent determination that the warrant was constitutionally infirm will not trigger the exclusionary rule. *Id.* at 922; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him . . . that the warrant he possesses authorizes him to conduct the search he has requested.").

Since the Second Circuit has never addressed when, if at all, time-frames are a constitutional requirement in business-record search warrants, and district courts in this circuit have not converged upon a clear rule, the Court cannot say that "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Buck*, 813 F.2d at 592 (quoting *Leon*, 468 U.S. at 922); *cf. Pearson v. Callahan*, 129 S. Ct. 808, 822 (2009) ("An officer conducting a search is entitled to qualified immunity [from suit] where clearly established law does not show that the search violated the Fourth Amendment.").

Notably, the Second Circuit applied the "good faith" exception in *Buck* because the law had been unclear at the time the executing officer had relied on the defective warrant:

> What the officers failed to do was anticipate our holding today that the particularity clause of the Fourth Amendment prohibits the use of a catch-all description in a search warrant, unaccompanied by any list of particular items or any other limiting language. In October, 1981, when the police applied for the warrant at issue, the law was unsettled as to how particular the description of the articles to be seized must be in order to comply with the Fourth Amendment. . . . This is the first case to address the issue in our court. . . . [P]rior to our decision, the existing cases left considerble ambiguity as to the exact requirements of the particularity clause . . . . In such a case, a reasonably well-trained police officer could not be expected to know that the warrant issued by [the magistrate] violated the Fourth Amendment.

813 F.2d at 592-93.

Similarly, in the present case, even if the Court were to hold the warrant overbroad for lack of a time frame, the good-faith exception to the exclusionary rule renders suppression unwarranted. *Accord United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents,* 307 F.3d 137, 151 (3rd Cir. 2002) ("[T]he absence from the warrant of a provision limiting the search and seizure to documents pertaining to the time period of the scheme did not make the warrant so facially deficient as to render official belief in its [legality] entirely unreasonable. Accordingly, the *Leon* exception [applies.]" (internal quotation marks and citation omitted) (alteration in original)); *Diaz,* 841 F.2d at 6 (applying good-faith exception to overbroad warrant authorizing seizure of documents predating the time period of the alleged offense because, given, *inter alia,* "[t]he complexity of the fraudulent scheme[,] . . . a reasonably

well trained officer would not necessarily have known that the search was illegal").[8]

## CONCLUSION

For the foregoing reasons, the Court appropriately denied the defendant's

motion to suppress the fruits of the search of his dental office.

*(signature)*

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 24, 2009

---

[8] Even if the warrant *were* overbroad and the good-faith exception *did not* apply, Cohan would still not be entitled to the relief he seeks, i.e., the suppression of all evidence seized under the warrant. Rather, the proper remedy under Second Circuit law would be to suppress only the evidence seized under the overbroad portions of the warrant. *See George*, 975 F.2d at 79 ("Fourth Amendment guarantees are adequately protected by suppressing only those items whose seizure is justified solely on the basis of the constitutionally infirm portion of the warrant.").