# SCHLAM STONE & DOLAN LLP

HARVEY M. STONE
RICHARD H. DOLAN
WAYNE I. BADEN
MICHAEL A. BATTLE
JAMES C. SHERWOOD
THOMAS A. KISSANE
BENNETTE D. KRAMER
JEFFREY M. EILENDER
JOHN M. LUNDIN
DAVID J. KATZ
JONATHAN MAZER
ERIK S. GROOTHUIS
ROBERT L. BEGLEITER
ELIZABETH WOLSTEIN

26 BROADWAY
NEW YORK, N.Y. 10004
———
(212) 344-5400
TELECOPIER: (212) 344-7677
www.schlamstone.com

PETER R. SCHLAM (1944-2005)
OF COUNSEL
RONALD G. RUSSO
MARY W. ANDERSON
HILLARY S. ZILZ
BRADLEY J. NASH
VITALI S. ROSENFELD

NIALL D. O'MURCHADHA
ANDREW S. HARRIS
SAMUEL L. BUTT
RAFFI MELKONIAN

September 5, 2013

**Filed via ECF**

Honorable Frederick Block
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

**RE: United States v. Barry Cohan**
**Docket No.: 07 CR 841 (FB)**

Dear Judge Block:

The parties are scheduled to appear before the Court next Friday, September 13, in an attempt to resolve the one outstanding issue that remains in this prosecution which began more than 6 years ago.[1] That issue is whether the government should be required to abide by its agreement to resolve the financial penalty to be imposed upon my client before my client's guilty plea was entered.

The issue was first raised at the time of sentencing before this Court and in correspondence submitted by the parties thereafter.  Also, it has been raised this year upon the government's attempt to seize Mr. Cohan's retirement account. For the reasons set forth below, since the government agreed to apply the funds which my client forfeited to make restitution to the victim of Dr. Cohan's criminal conduct, it should now be estopped from seeking to seize *an additional*  six hundred thousand ($600,000) as restitution.

The record is clear that the government entered an agreement, and the defendant relied upon it, that the funds seized and forfeited in 2007, together with an additional

---

[1] While the date for this appearance has not been adjourned as of this writing, both parties have consented to a brief adjournment to a future date convenient to the Court.

amount to equal six hundred thousand ($600,000) dollars would be turned over to the victim, the Port Authority, as restitution. Accordingly, it is overreaching and unjust for the government to now claim that the funds seized were intended to be forfeited to the government and that *an additional* six hundred thousand ($600,000) should now be paid over to the Port Authority as restitution. That is simply not the bargain the government struck and it should be estopped from making such a claim. Indeed, should this issue not be able to be resolved on papers, I respectfully ask that the Court schedule a hearing to take evidence to assist in bringing this matter to a just result.

When a resolution of this prosecution via a plea of guilty was first broached, not only was the issue of my client's incarceration discussed but also of the financial penalty to be imposed. It was clearly the understanding of the parties at that time, that the defendant would forfeit the accounts that had been seized at the time of his indictment and that he would also be liable for funds in excess of the funds seized to a maximum of six hundred thousand ($600,000) dollars. Those funds, according to the agreement of the parties, were to be used to make the Port Authority whole.

When Dr. Cohan came before this Court for sentencing more than three years ago, on May 28, 2010, this very issue was raised. At that time, the Court inquired into the financial penalty to be imposed. The issue of making the Port Authority whole was raised by your Honor, front and center, then. After addressing the fact that the Preliminary Order of Forfeiture would become the Final Order of Forfeiture, the Court stated:

The Court: I want you to think about this. Since we talked about the $600,000 that's covered by the forfeiture we have a mandatory restitution statute here and I know the focus of your submissions has not been on this issue but I have to make a complete package here. Clearly, when you have a forfeiture here in this type of case then you have a real identifiable victim, and you talk about roughly the same amount of money, how do you process that? I mean I would like to see the money go to the victim but under the forfeiture law I guess it doesn't go to the victim; it goes to the Government.

Is there any sense of how we should manage this situation since obviously he's not going to have any money left over to pay the victim? I'm curious as to what your take is on that and how you think that should be handled me.

Then AUSA Brownell responded:

Your Honor,  I don't have a definitive answer because I don't work in our forfeiture unit but *my understanding is that the money will ultimately go to the Port Authority* but I will – unfortunately the forfeiture assistant isn't in the office today but I will….(*See* the Sentencing Minutes at pp.5-9, attached as Exhibit A; emphasis supplied.)

This was precisely the agreement that had been struck by the parties as part of disposing of this matter. It is evident that the Court was troubled by this issue at that time and, while it declined to impose a financial penalty at that time, imposed a prison term upon my client and invited further briefing on this very issue.

On May 28, 2010, the Court entered a minute entry on PACER in this case which read, inter alia, "The judgment shall not be issued until after the Court decides whether to impose restitution, order forfeiture or both." (*See* Exhibit B). Accordingly, there can be no question that the Court was troubled by the remarks made at sentencing and declined to enter a judgment addressing the very issue that is at stake now.

On June 2, 2010, the government, in its never-ceasing attempts to punish Dr. Cohan beyond what the Court thought appropriate, raised two issues: First, that a more severe prison sentence than that imposed by this Court on May 28 should be imposed due to "newly discovered evidence of additional fraudulent conduct" and, second, that in addition to forfeiture in the amount of six hundred thousand ($600,000) dollars, to which the parties had agreed, a penalty of *an additional* six hundred thousand ($600,000) dollars in restitution be imposed. No such agreement had ever been discussed, let alone agreed upon.

Accordingly, on June 15, in response, I wrote to the Court and specifically addressed the issue of what I termed "The Forfeiture Plus Restitution Issue." (My letter to the Court, dated June 15, is attached as Exhibit C.) In that letter, I wrote:

> Counsel have held discussions throughout the pendency of this case concerning the interplay of restitution and forfeiture, and I have long understood that the Government, in its discretion, intends to allocate the funds it seized from Dr. Cohan for forfeiture toward the restitution obligation[2]. This is consistent with the applicable laws (and, I believe with DOJ regulations). For under the restitution provisions, victims of crimes have the right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). This Court "shall ensure" that these and other victims' rights are vindicated, and the Government has the obligation to "make [its] best efforts" to this end. Id. § 3771(b)(1), (c)(1). Thus, while the related forfeiture provisions provide that a defendant shall forfeit "to the United States" the fruits of his crime, including so called "substitute assets" under certain conditions, the Government has indicated that it intends for the assets obtained from the forfeitures in this case be applied toward victim restitution. (*See* Exhibit C at p. 2)

Counsel stands by those statements of the government made to both myself and David Wikstrom, Esq., who acted as my co-counsel in this matter. Indeed, I am prepared to put forth sworn testimony at a hearing in support of our position.

_____

[2] Indeed, this is exactly what the government agreed to in resolving this matter and what AUSA Brownell stated to the Court at the time of sentencing.

**Dr. Cohan's Efforts to Resolve this Matter since Sentencing**

As was discussed when the parties were last before your Honor, in addition to the bank accounts that were seized at indictment, Dr. Cohan's professional office here in Brooklyn was also seized. The surrender of the title to that office following sentence in 2010, has been and continues to be lost in some sort of government bureaucracy, much to the defendant's, and the Port Authority's, detriment. Over the last several years, attempts have been made to resolve this matter with a payout to satisfy the debt. I met with AUSA Tanya Hill of the Civil Division, prior to her reassignment from this case and almost two years ago I wrote to Ms. Hill making what I believed then was a reasonable offer. (My letter to AUSA Hill dated October 20, 2011, is annexed as Exhibit D.) Sadly, and at every turn, the government has, in essence, wasted the defendant's asset as Dr. Cohan's office, owned by the government for years, remains vacant, unused and accruing mortgage and tax obligations. All these additional costs will further erode the value of this apartment and diminish the return to the Port Authority. Rather than having maximized the return to the Port Authority, as it represented it would at sentencing years ago, at every turn the government has stymied the defendant's efforts to make the government whole on the bargain it struck.

Counsel first learned, as did the Court, on May 10, 2013 that rather than having turned over the funds forfeited to the government to the victim, as was agreed to by the parties and as was stated by government counsel on the record when my client was sentenced, those funds are in the Government's possession; and contrary to the agreement of the parties, the government is now seeking yet another six hundred thousand ($600,000) dollars from Dr. Cohan to pay over to the victim. In sum, this is not the agreement the parties entered and the government should be estopped from making this latest claim.

Thanking the Court for its courtesy, I remain

Respectfully,

Ronald G. Russo /SHSS

Ronald G. Russo

Cc:    Mary Dickman, Esq.
       Assistant U.S. Attorney

# Exhibit A

5

1       THE COURT: Just bear with me. I know I have it.

2       MR. BROWNELL: I think I have it here, Your Honor.

3       THE COURT: For some reason I just can't get my

4   fingers on it right now and I don't know why not. I know it's a

5   year and a day. I can't locate it but you have received a copy

6   of it everybody.

7       MR. RUSSO: And I thank the Court for its wisdom and

8   divulging this to counsel. As the Court knows not every court

9   does that and it was very, very helpful for us, Your Honor.

10      THE COURT: If you have an extra copy of them let me

11  have it. For some reason I must have left this back --

12              [Pause in proceedings.]

13      THE COURT: Thank you very much. So I read the

14  comments very carefully and one of the questions I'm going to

15  pose to you, Mr. Brownell and your group, is to allow you to

16  comment of course on the fact that the recommendation is a year

17  and a day tacked onto the mandatory 24 months and the

18  justification for it set forth in the comments by the Probation

19  Department is set forth in the statements that the defendant is

20  married with three children, he has been a dentist since 1981.

21  It refers to his medical problems. We're going to talk more

22  about that and -- which in the opinion of the Probation

23  Department believes should be considered in determining his

24  sentence. He's 52. He's been a productive member of society.

25  He's going to be losing in all likelihood his license to

6

1   practice dentistry and his prospect for future employment will

2   be severely hampered as a result of that.

3          And it goes on to talk about the fact that his

4   conduct should not be minimized but talks about once again the

5   suffering of substantial collateral penalty because of his

6   federal conviction and his loss of his livelihood and concludes

7   that the guideline range in this case in the opinion of the

8   Probation Department is overly harsh and it believes that a non

9   guideline sentence of a year and a day is appropriate which has

10  to go consecutive through the mandatory 24 months. So that's

11  the take of Probation and I know that in your submissions, Mr.

12  Klein [sic], [inaudible] submissions he takes serious issue

13  with that but we're going to have to talk about that so you're

14  aware of that.

15         I have the underlying minutes before Judge Townes who

16  took the plea back on June 10, 2009 and I reviewed the

17  allocution that's at Pages 24, 25, 26, et cetera, and he's

18  adequately pled to Count 1 and Count 5 and I'll accept the

19  recommend -- well, I don't have to accept the recommendation.

20  She's not a magistrate judge. So the plea has been taken and

21  there's no need for me to do more with respect to that.

22         Was there a Plea Agreement here?

23         MR. BROWNELL: There was, Your Honor.

24         THE COURT: I don't have it. I like to have it in my

25  file.

7

1    MR. BROWNELL: This may be an unsigned one which I

2 believe it is.

3      [Pause in proceedings.]

4    MR. RUSSO:  I have no reason to believe that this

5 isn't the copy that we signed, Your Honor.  The details are

6 that there is a mandatory minimum of 24 months required, that

7 there is a guideline that was suggested at that time of 61 to

8 70 months.  It's precisely what the Probation -- the PSR

9 suggested.

10    THE COURT: So I have that in the file and as Mr.

11 Russo just indicated that the estimated range of that time is

12 41 to 51 months and in Paragraph 4 I assume there's a waiver

13 here.  The waiver is that the defendant is not going to

14 challenge the conviction or sentence if I impose a term of

15 imprisonment of 75 months or below which will be the case but

16 we probably all realize that is a window of opportunity

17 nonetheless for the defendant to appeal if a constitutional

18 right of his has been violated.  Something very fundamental or

19 basic and the Second Circuit has expressed itself about that.

20    So I'll advise him right now that if he wishes to

21 take advantage of that window of opportunity such as it exists

22 you'll have to file a notice of appeal within ten days after

23 the judgment is going to be entered and perfect it within

24 thirty days unless he gets an extension of time from the

25 Circuit Court of Appeals.  So I've taken care of that.

8

1          Now, we had this preliminary order of forfeiture. I

2    take it that is going to be a final order of forfeiture here

3    that's going to be entered as well.

4          MR. BROWNELL: That's correct, Your Honor.

5          THE COURT: All right. So there's no difference

6    between the preliminary and the final. I mean we can accept

7    the preliminary as the final or --

8          MR. BROWNELL: That's my understanding.

9          MR. RUSSO: That's mine as well, Judge.

10         THE COURT: So that will be attached as part of the

11   judgment.

12         I want you to think about this. Since we talked

13   about the $600,000.00 that's covered by the forfeiture we have

14   a mandatory restitution statute here and I know that the focus

15   of your submissions has not been on this issue but I have to

16   make a complete package here. Clearly when you have a

17   forfeiture here in this type of case then you have a real

18   identifiable victim, and you talk about roughly the same amount

19   of money, how do you process that? I mean I would like to see

20   the money go to the victim but under the forfeiture law I guess

21   it doesn't go to the victim; it goes to the Government.

22         Is there any sense of how we should manage this

23   situation since obviously he's not going to have any money left

24   over to pay the victim? I'm just curious as to what your take

25   is on that and how you think that that should be handled by me.

9

1          MR. BROWNELL: Your Honor, I don't have a definitive

2    answer because I don't work in our forfeiture unit but my

3    understanding is that the money will ultimately go to the Port

4    Authority but I will -- unfortunately the forfeiture assistant

5    isn't in the office today but I will --

6          THE COURT: Let me -- we can deal with this matter I

7    guess at a later date and we can handle everything else but I

8    asked my clerk to sort of see what's out there in the law about

9    that because conceptually forfeiture plays a different role

10   than restitution but here I would like to see the money go to

11   the victim and how can we do that in the context of a

12   forfeiture scenario and a restitution, a mandatory restitution

13   situation.  I'm just puzzled.  Mr. Russo.

14         MR. RUSSO: In light of the Court's remarks I have had

15   several conversations with Tanya Hill, the Assistant U.S.

16   Attorney who's -- the assistant who's handling this forfeiture.

17   I neglected to note that David Richmond is here --

18         THE COURT: He may know the answer to this.

19         MR. RUSSO: My co-counsel.  I think that his

20   suggestion is the right, that the Court might forbear with

21   entering with a final order until we have an opportunity to

22   brief this.  The reality is that I think the Government has

23   agreed that we have a single victim here, the Port Authority,

24   and getting the money back to the Port Authority is certainly

25   something that Dr. Cohan is anxious to do as well.  So if we

# Exhibit B

**Ronald G. Russo**

| | |
|---|---|
| **From:** | ecf_bounces@nyed.uscourts.gov |
| **Sent:** | Friday, May 28, 2010 3:04 PM |
| **To:** | nobody@nyed.uscourts.gov |
| **Subject:** | Activity in Case 1:07-cr-00841-FB USA v. Cohan Sentencing |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

### Eastern District of New York

**Notice of Electronic Filing**

The following transaction was entered on 5/28/2010 at 3:04 PM EDT and filed on 5/28/2010
**Case Name:**          USA v. Cohan
**Case Number:**       1:07-cr-00841-FB
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**Minute Entry for proceedings held before Senior Judge Frederic Block: AUSA Daniel Brownell and Ronald Russo, Esq. for Mr. Cohan, all present. Sentencing held on 5/28/2010. Statements of the defendant and counsel heard. The defendant is sentenced on counts 1ss and 5ss to: ONE (1) YEAR AND ONE (1) DAY ON COUNT 1ss AND TWENTY-FOUR (24) MONTHS ON COUNT 5ss. THE SENTENCE IMPOSED ON COUNT 1ss SHALL RUN CONSECUTIVELY TO THE SENTENCE IMPOSED ON COUNT 5ss FOR A TOTAL OF THREE (3) YEARS TO BE FOLLOWED BY THREE (3) YEARS OF SUPERVISED RELEASE WITH NO SPECIAL CONDITIONS. THE DEFENDANT SHALL PAY A $200.00 SPECIAL ASSESSMENT. The defendant's letter dated 5/19/10 filed under seal is now unsealed for the reasons stated on the record. By June 4, 2010 counsel shall ECF file a letter as to the issue discussed about imposing both restitution and forfeiture and whether the Court has the authority to impose both. The judgment will not be issued until after the Court decides whether to impose restitution, order forfeiture or both. The governments motion to dismiss any remaining counts is GRANTED. The defendant is advised of his right to appeal and is directed to report to the probation department. The defendant shall remain on bail with the same bail conditions until his surrender date of 7/9/10 to the designation facility. (Court Reporter: ESR/ Loan Hong (718) 613-2590) (Innelli, Michael)**

**1:07-cr-00841-FB-1 Notice has been electronically mailed to:**

Tanya Yvette Hill Tanya.Hill@usdoj.gov, USANYE-CRDOCKET@usdoj.gov

Charles Steven Kleinberg Charles.Kleinberg@usdoj.gov, USANYE-CRDOCKET@usdoj.gov

Ronald G. Russo rrusso@schlamstone.com, rgrbarrister@aol.com

Daniel D. Brownell daniel.brownell@usdoj.gov, USANYE-CRDOCKET@usdoj.gov

**1:07-cr-00841-FB-1 Notice will not be electronically mailed to:**

John N. Tasolides
Law Offices of John N. Tasolides
6800 Jericho Turnpike
110W
Syosset, NY 11791

Richard T. Faughnan
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

# Exhibit C

Case 1:07-cr-00841-FB   Document 70   Filed 06/15/10   Page 1 of 7 PageID #: 801

# SCHLAM STONE & DOLAN LLP

HARVEY M. STONE
RICHARD H. DOLAN
WAYNE I. BADEN
JAMES C. SHERWOOD
THOMAS A. KISSANE
BENNETTE D. KRAMER
JEFFREY M. EILENDER
JOHN M. LUNDIN
DAVID J. KATZ
JONATHAN MAZER

26 BROADWAY
NEW YORK, N.Y. 10004
————
(212) 344-5400
TELECOPIER: (212) 344-7677
www.schlamstone.com

PETER R. SCHLAM (1944-2005)

OF COUNSEL
RONALD G. RUSSO
MARY W. ANDERSON
ERIK S. GROOTHUIS
HILLARY S. ZILZ

NIALL D. O'MURCHADHA
ANDREW S. HARRIS
SAMUEL L. BUTT

June 15, 2010

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Barry Cohan</u>
07 CR 841 (FB)

Dear Judge Block:

I write in response to the Government's letter of June 2, 2010 regarding (1) the forfeiture/restitution issue that was left open at the May 28th sentencing proceeding, and (2) the Government's request for what is, in essence, a resentencing of the defendant, based on allegedly new information.

## 1. The Forfeiture Plus Restitution Issue

The Government is correct that <u>both</u> restitution and forfeiture may be ordered. Under the Mandatory Victims Restitution Act of 1996, ("MVRA"), restitution is mandatory for certain crimes, such as "an offense against property under this title ... including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). A district court must order restitution where "an identifiable victim or victims has suffered a ... pecuniary loss." *Id.* § 3663A(c)(1)(B).

Forfeiture, on the other hand, which must be determined pursuant to 18 U.S.C § 981, permits the designation of assets for forfeiture based upon their traceability to the alleged offense at the start of a prosecution. Although penal in nature, forfeiture is not part of restitution, which is also penal. Forfeiture and restitution may be simultaneously

Hon. Frederic Block
June 15, 2010
Page 2

imposed, *United States v. Stathakis*, 320 Fed.Appx. 74, 78, 2009 WL 932582 (2d Cir. 2009) and, as a matter of fact, frequently compete for the same assets of a convicted defendant. *See, e.g., United States v. Rubin*, 558 F.Supp.2d 411 (E.D.N.Y. 2008)(Vitaliano, J.).

Counsel have held discussions throughout the pendency of this case concerning the interplay of restitution and forfeiture, and I, given my client's guilty plea last June, have long understood that the Government, in its discretion, intends to allocate the funds it seized from Dr. Cohan for forfeiture toward the restitution obligation. This is consistent with the applicable laws (and, I believe with DOJ regulations). For under the restitution provisions, victims of crimes have the right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). This Court "shall ensure" that these and other victims' rights are vindicated, and the Government has the obligation to "make [its] best efforts" to this end. *Id.* § 3771(b)(1), (c)(1). Thus, while the related forfeiture provisions provide that a defendant shall forfeit "to the United States" the fruits of his crime, including so-called "substitute assets" under certain conditions, the Government has indicated that it intends for the assets obtained from the forfeitures in this case be applied toward victim restitution.

It was also appropriate for the Court, at sentencing, to leave this issue open and invite additional submissions from the parties. Indeed, the statute plainly requires it. *See* 18 U.S.C. § 3664(d)(5) ("[T]he court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.")

## 2. The Government's Request for a "Do-Over"

The Government's request for a recalculation of the sentencing guidelines and for the imposition of a "new term of imprisonment" for what it alleges to be newly-discovered evidence of an additional fraud is both factually unwarranted and legally frivolous.

As the Court knows, Dr. Cohan will shortly commence his prison term and is winding down his dental practice. In anticipation of that, he instructed his office staff to bill all of his customers whose accounts showed balances due on the firm's computers and billing software. Before Government counsel cries that Dr. Cohan is once again "blaming his staff," let me assure the Court that I have spoken with the staff members involved and learned they were instructed to bill each and every customer with a balance due. I do not yet know the precise number of bills that were sent out, but the estimate I

Hon. Frederic Block
June 15, 2010
Page 3

was provided with was approximately 150—in other words, far more than the number of
Port Authority patients that are the subject of this case.

To be sure, Dr. Cohan realizes full well that these accounts ought not be billed or
collected. Obviously, Dr. Cohan should have instructed his staff to segregate out and not
to send bills to his PA patients, given his conviction and sentence in this case. But his
failure to do so surely was not an attempt to re-perpetrate, two days prior to sentence, the
very fraud for which he well knew he was about to be punished, and it is somewhat
fanciful to believe otherwise. These bills were for the same services and in the same
amounts that were sent to the PA patients before, many years ago. They are thus not new
at all, and certainly not a new crime; they are simply part of the offense conduct.

Even if the facts were otherwise, which they are not and which Dr. Cohan
strenuously denies, the Government's application would have to be denied because, as a
legal matter, it is frivolous.  Title 18 Section 3582 provides (emphasis supplied):

> (c) Modification of an imposed term of imprisonment.—The court may not modify
> a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term
> of imprisonment (and may impose a term of probation or supervised release with or
> without conditions that does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section 3553(a) to the extent that
> they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison,
> pursuant to a sentence imposed under section 3559(c), for the offense or offenses for
> which the defendant is currently imprisoned, and a determination has been made by the
> Director of the Bureau of Prisons that the defendant is not a danger to the safety of any
> other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the
> Sentencing Commission; and

Case 1:07-cr-00841-FB   Document 70   Filed 06/15/10   Page 4 of 7 PageID #: 804

Hon. Frederic Block
June 15, 2010
Page 4

> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

For purposes of §3582, a sentence of imprisonment is "imposed upon the Court's oral pronouncement of sentence. (*See*, F.R.Cr.P. 35( c): "'Sentencing' Defined. As used in this rule, 'sentencing' means the oral announcement of the sentence.") After its imposition, then, there is no authority for modification of a sentence save that provided by Rule 35, which provides, in pertinent part, that

> (a) Correcting Clear Error. Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.

The Court's power to correct mathematical or technical errors within 14 days does not mean it has the power to change its mind about the appropriateness of the sentence, or to reconsider the sentencing guidelines. As the Advisory Committee's 1991 Notes say,

> The authority to correct a sentence under this subdivision is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a). The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

Hon. Frederic Block
June 15, 2010
Page 5

Indeed, the Advisory Committee explicitly rejected a proposed 120-day "correction" provision in Rule 35 "based on new factual information not known to the defendant at the time of sentencing." The Committee said,

Unlike the proposed subdivision (c) which addresses obvious technical mistakes, the ability of the defendant (and perhaps the government) to come forward with new evidence would be a significant step toward returning Rule 35 to its former state. The Committee believed that such a change would inject into Rule 35 a degree of postsentencing discretion which would raise doubts about the finality of determinate sentencing that Congress attempted to resolve by eliminating former Rule 35(a). It would also tend to confuse the jurisdiction of the courts of appeals in those cases in which a timely appeal is taken with respect to the sentence.

The Court of Appeals has spoken conclusively on this issue. In *United States v. Abreu-Cabrera*, 64 F.3d 67 (2d Cir. 1995), the District Court sentenced the defendant to 57 months on his conviction for reentry following deportation. Four days after the sentence was imposed, and before the formal written judgment had been filed, the Court entered an order stating it "may not have been apprised of and considered all relevant factors" in sentencing Abreu-Cabrera, "and therefore wishe[d] to consider correcting the sentencing pursuant to Rule 35(c) of the Federal Rules of Criminal Procedure." Upon resentence, the court departed to a sentence of 24 months. The government promptly appealed and the Second Circuit, following a lengthy discussion of the history of Rule 35 and proceedings to modify already-imposed sentences, agreed and vacated the sentence, stating,

Whatever error was perceived by the sentencing court certainly could not be categorized as an arithmetical or technical error; nor could it be "other clear error." The failure to make a downward departure at Abreu-Cabrera's initial sentencing did not constitute an obvious error or mistake that would have resulted in a remand by this Court. Defendant's original sentence was not illegal, nor was it the result of an incorrect application of the guidelines or unreasonable. Since Abreu-Cabrera's resentencing represented nothing more than a

Hon. Frederic Block
June 15, 2010
Page 6

> district court's change of heart as to the appropriateness of the
> sentence, it was accordingly not a correction authorized by
> Rule 35(c).[1]

---

[1]  The Circuit also held that the seven-day time limit under 35(c) [now a 14-day limit,
following a 2004 amendment to the rule] was jurisdictional and could not be extended by order.
("We have held, as have several other circuits, that the seven-day period provided for in Rule
35(c) is jurisdictional. *See United States v. Werber*, 51 F.3d 342, 348 (2d Cir.1995); *Lopez*, 26
F.3d at 519 & n. 8; *United States v. Morillo*, 8 F.3d 864, 869 (1st Cir.1993) (Rule 35(c)'s
seven-day interval is an absolute limitation); *United States v. Daddino*, 5 F.3d 262, 265 (7th
Cir.1993) (*per curiam*) (court's attempt to correct sentence two months later "falls well outside of
the limited authority provided in Rule 35(c)"). In *Werber* we held that corrected sentences,
imposed almost four months and over seven months after imposition of original sentences, were
invalid because "outside the seven-day window of Rule 35(c)." *See* 51 F.3d at 348; *accord
Lopez*, 26 F.3d at 520 (court lacked jurisdiction where resentencing occurred three months after
original sentencing); *United States v. Fahm*, 13 F.3d 447, 454 (1st Cir.1994) ("Since the narrow
window of opportunity allowed under Rule 35(c) closed [three months] before the district court
reconsidered its original sentence ... the original sentence must be reinstated.").

Hon. Frederic Block
June 15, 2010
Page 7

     For all of these reasons, we respectfully submit that the Government's application to amend the guidelines and impose a new sentence must be denied.

                            Respectfully submitted,

                            Ronald G. Russo, Esq.

cc:    Charles Kleinberg, Esq.
       Barry Cohan

# Exhibit D

# SCHLAM STONE & DOLAN LLP

HARVEY M. STONE
RICHARD H. DOLAN
WAYNE I. BADEN
MICHAEL A. BATTLE
JAMES C. SHERWOOD
THOMAS A. KISSANE
BENNETTE D. KRAMER
JEFFREY M. EILENDER
JOHN M. LUNDIN
DAVID J. KATZ
JONATHAN MAZER
ERIK S. GROOTHUIS
ROBERT L. BEGLEITER
ELIZABETH WOLSTEIN

26 BROADWAY
NEW YORK, N.Y. 10004

(212) 344-5400
TELECOPIER: (212) 344-7677
www.schlamstone.com

PETER R. SCHLAM (1944-2005)
OF COUNSEL
RONALD G. RUSSO
MARY W. ANDERSON
HILLARY S. ZILZ
BRADLEY J. NASH
VITALI S. ROSENFELD

NIALL D. O'MURCHADHA
ANDREW S. HARRIS
SAMUEL L. BUTT
DAVID G. ABRAMS

October 20, 2011

Tanya Y. Hill, Esq.
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

Re:    United States v. Barry Cohan
        Criminal Case No. CR-07-0841 (FB)

Dear Ms. Hill:

I write further to our recent conversations and in the hope of presenting a viable payout schedule so as to permit my client, Barry Cohan's wife, to continue to own the real estate which was recently liened in connection with the referenced case.

When we spoke last, you asked me to let you have more information about the property located at 8103 Avenue M in Brooklyn. The facts with respect to the property are these: The subject real estate is a professional (dental) condominium. The property is probably worth a bit more than what was paid for it although I have not done a recent appraisal. Accordingly, the best estimate is it has a value of about $200,000 or perhaps $215,000 at most.

However, in order for this unit to be used as a residential unit, it must first be converted back to an apartment since it has no kitchen, bath or tub. A fair estimate to convert it to a residence would be approximately $40-50,000. As for the income/expenses to my client's wife for owning the property, she receives a rental income of some $900/month and she pays expenses of $1800/month which includes Condo fees (226.15/month), Electric ($300/month), gas ($150/month) and mortgage ($1738.11/month). (See enclosed mortgage and condo bills). The property runs at a large deficit.

Currently, the amount remaining on the mortgage is approximately $110,000. However, due to the extraordinary financial difficulties encountered by my client and his wife as result of the instant prosecution, Dr. Cohan's incarceration, the loss of dental license and practice and the

concomitant loss of his income, the maintenance charges have not been paid for months and, as of August, 16, 2011, constituted an additional lien of $15,480.17 on the property. Finally, I am assuming that even if the government were to be the seller, an additional 6% would be paid for the broker's fee.

These figures would yield a net return from the sale of the property of approximately $35,000. Assuming a sale price of $210,000 less the mortgage ($210,000-$110,000 = $100,000) less the current unpaid maintenance ($100,000-$15,000 = $85,000) less the cost of converting the property ($85,000 - $40,000 = $45,000) less a reasonable broker's fee, say 5% of $210,00 ($45,000 - $10,000 = $35,000). While holding the property for sale, the government could easily incur another $25,000 in carrying charges, depending, of course on how quickly the property sells. Despite his difficult circumstances, I believe my client, over time, could repay this.

My client anticipates being released from incarceration in February, 2012 but will then face a halfway house for six months. He would be interested in a schedule beginning in October of next year, one year from now, where he would pay you $500 per month, or more, if possible, going forward until his debt his satisfied. Please consider this and let me know what is possible.

Thanking you for your courtesies and assistance, I remain

Very truly yours,

Ronald G. Russo

Cc:   Barry Cohan
      Audrey Cohan